## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DEBORAH GUZZO,**

                                                         **CASE NO.:**

      **Plaintiff,**

**vs.**

**SCHOOL BOARD OF PASCO**
**COUNTY, FLORIDA,**

      **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, DEBORAH GUZZO, hereinafter referred to as "PLAINTIFF" by and through her undersigned counsel, and sues the Defendant, PASCO COUNTY SCHOOL BOARD, hereinafter referred to as "DEFENDANT" and alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367.

2.      Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3.      Plaintiff is a resident of Pasco County, Florida.

4.      Defendant is a legal entity created by the Florida Constitution to provide a system of public education within Seminole County, Florida.  At all times material, Defendant employed Plaintiff.  At all times material, Defendant employed the requisite number of employees and, therefore, is an employer as defined by the Americans with Disabilities Act, the Florida Civil Rights Act, and the Family and Medical Leave Act (FMLA).

5.      At all times material, Plaintiff was an employee of Defendant within the meaning of the Americans with Disabilities Act, the Florida Civil Rights Act, and the FMLA.

## GENERAL ALLEGATIONS

6.      At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

7.      At all times material, Plaintiff was qualified to perform her job duties within the legitimate expectations of her employer.

8.      Plaintiff has retained the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

9.      Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

10.     On October 14, 2020, Plaintiff timely filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

11.     On June 22, 2021, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charge of Discrimination.  This Complaint is filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

12.     Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charge.

## FACTUAL ALLEGATIONS

13.     Plaintiff is a 58-year-old female who suffers from disabilities including anxiety and severe Osteoarthritis, also known as "bone on bone" in both of her knees.

14.     On or about May 31, 2005, Plaintiff began her employment with Defendant as a Senior Child Care Group Leader with Pasco Learning and Activity Centers of Enrichment (PLACE).

15.     Due to the severe Osteoarthritis in both knees, Plaintiff requested a reasonable accommodation for her disability.

16.     In or around the beginning of 2018, due to her severe Osteoarthritis, Plaintiff was given permission by Jennifer Wendel (Human Resources) to use her cane, as well as two (2) minute sitting breaks every 30 minutes.

17.     Plaintiff's previous manager, Jenette Mardyoz, permitted Plaintiff to take breaks without issue.  However, Briana Tranchina (Enrichment Specialist) took issue with Plaintiff's sitting breaks and made multiple negative comments about it.

18.     In or around September or October 2018, Nicole Reynolds (Site Manager) issued Plaintiff a written reprimand for sitting with the children. Reynolds stated that the school district told her to issue Plaintiff the reprimand.

19.     On or about November 21, 2018, Plaintiff was admitted to Northbay Hospital and had emergency surgery for umbilical hernia blockage.  As a result, Plaintiff took leave under the Family and Medical Leave Act (FMLA) for 12 weeks and returned to work on approximately February 19, 2019.

20.     When Plaintiff returned from her approved FMLA leave, Reynolds was very cold toward Plaintiff and was rude when she spoke with her.

21.     Additionally, upon Plaintiff's return from FMLA leave, Reynolds would not permit Plaintiff to engage activities with the students (music, jewelry,

games) that Plaintiff was permitted to do in the past.  For example, Reynolds told Plaintiff that she could no longer do the 5:30 p.m. games with the children, despite other locations having the 5:30 p.m. games.

22.     Reynolds also made Plaintiff go to the playground and get the kids from the bus more than her co-workers when she knew it was a long walk.

23.     On or about February 20, 2019, Tranchina told Plaintiff that she needed to be at work "no matter what," she did not care about Plaintiff's circumstances, and that Plaintiff would be written up each time that she missed work because Plaintiff was out of sick time due to her FMLA leave.

24.     During this time, Plaintiff's son was recovering from a serious and potentially life-threatening health condition.  Despite this, Tranchina told Plaintiff that she was "hindering" the program with taking so much time off and that her "family emergencies" were always an "issue."

25.     On or about February 22, 2019, Plaintiff was told by Reynolds that she had to announce each time that she needed to sit to tie her shoe and was required to announce when she was taking her two-minute sitting breaks.

26.     Additionally, Plaintiff was required to announce each time that she went to the restroom or picked up a toy under the table.

27.     Moreover, Plaintiff was verbally reprimanded by Reynolds and Tranchina for sitting down to tie the children's shoes and was told that she was no longer permitted to sit to tie the children's shoes.

28.     Furthermore, Debra Hasson (Assistant Site Manager) documented every move that Plaintiff made.

29.     In or around February 2019, Reynolds issued Plaintiff a written reprimand for sitting.  However, Plaintiff's co-workers and management were regularly sitting on tables, benches, and on the stage but were not reprimanded.

30.     During Spring Break 2019, Plaintiff went to another school to help with coverage.  The manager, Nina (last name unknown), permitted Plaintiff to sit and do jewelry with the students.

31.     When Reynolds found out that Plaintiff was sitting and doing jewelry at the other school, she verbally reprimanded Plaintiff.

32.     On or about March 19, 2019, Plaintiff was hit in the face with a ball. Five minutes later Plaintiff was hit again, and it broke her glasses.

33.     Plaintiff radioed to Reynolds to let her know.  Reynolds did not ask Plaintiff if she was okay; instead, she told Plaintiff that they would fill out Workers' Compensation paperwork if it would make her "happy."

34.     On or about April 10, 2019, a co-worker, Ilene (last name unknown), who was working outside asked if someone would open the side door for her to

come in.  Reynolds went down the hall and opened the door for Ilene (last name unknown) and the kids to come in.

35.    By comparison, on or about April 11, 2019, Plaintiff was coming in the side door and asked if someone could open it for her to come in.  Reynolds said to Plaintiff, "you can walk around to the front."

36.    During Summer 2019, Tranchina would not permit Plaintiff to sit during the kids' rest time; however, all of Plaintiff's co-workers were permitted to sit during this time.

37.    Plaintiff asked Tranchina why her co-workers were permitted to sit and she told Plaintiff the rule applied to Plaintiff and not to worry about what others did.

38.    On June 11, 2019, Sandra Jay (Manager, ASEP Program) issued Plaintiff a reprimand for unsatisfactory performance in the area of "Reliability." Jay referenced Plaintiff's "ongoing, documented issue" with attendance and noted that Plaintiff was in "unpaid sick leave status."   The reprimand further stated that Plaintiff exhausted all of her leave under the FMLA.

39.    On or about September 27, 2019, Plaintiff was called to a meeting at the district office for sitting with the children, abusing her sick time, and hindering the program.   During the meeting, Tom Neesham (Human Resources) told

Plaintiff that she should be looking for a different job because she was "not long" for her job with the school district.

40.     On October 11, 2019, Jay issued Plaintiff another reprimand for unsatisfactory performance in the areas of "Reliability" and "Work Performance." Again, Jay noted Plaintiff's "ongoing, documented issue" with attendance and noted that Plaintiff was in "unpaid sick leave status."

41.     On or about November 21, 2019, Plaintiff spoke with Jennifer Wendell regarding her schedule to figure out if she could sit at the beginning of the afternoon program to fill out her clipboard, since it was difficult to fill out the clipboard while using her cane.

42.     After speaking with Wendell, Plaintiff was reprimanded by Tranchina who told her that she was supposed to talk to her first.

43.     Tranchina stated that she was unaware that Plaintiff needed her cane and wanted Plaintiff to put it down during attendance. Plaintiff explained that part of her accommodation was to use her cane to walk.  Tranchina responded: "your accommodations are going to put you right out of a job Debbie."

44.     On or about November 22, 2019, Tranchina called Plaintiff into her office and stated that she heard from Hasson that Plaintiff was sitting down while handing out snacks and "want[ed] to know why."  Plaintiff explained that it was part of her ADA accommodation schedule and Tranchina told Plaintiff: "that's not

true." Plaintiff showed Tranchina her ADA schedule from Wendell and Tranchina told Plaintiff that, until she "look[ed] into it," Plaintiff was required to stand to do snacks.

45.    Tranchina had Hasson take notes about Plaintiff and told Plaintiff that they would be watching her "every move."  Moreover, Tranchina told Plaintiff that she was going to have Laura (last name unknown, Substitute Manager) watch everything that Plaintiff did and report back to her.

46.    Plaintiff left work crying that day.

47.    On or about December 3, 2019, Plaintiff made a written complaint of disability discrimination and harassment.  Plaintiff outlined in detail the instances of discriminatory and harassing behavior by Tranchina between February and November 2019.

48.    Amanda (last name unknown, Human Resources) told Plaintiff that she investigated and all that she could determine was that Tranchina was "coaching" Plaintiff.

49.    On December 9, 2019, Plaintiff met with Wendell, Hasson, Chris Siller (United School Employees of Pasco), and Tranchina regarding her request for reasonable accommodations for her disabilities.

50.    On December 11, 2019, Plaintiff was admitted to the hospital due to job-related stress and was diagnosed with anxiety and chest pain.

51.     Initially, Plaintiff was released to return to work on December 16, 2019. On December 26, 2019, Plaintiff's doctor's office submitted a note indicating that her absence was physician-advised due to illness or injury and Plaintiff could return to work on January 1, 2020.

52.     On or after December 16, 2019, Tranchina provided Plaintiff with a "Daily Schedule to include ADA Breaks."

53.     On December 23, 2019, Plaintiff wrote a letter to Mary Grey (Director, ASEP Program) stating that she felt she was being bullied in the workplace.  Grey never responded.

54.     On December 30, 2019, Plaintiff's doctor's office submitted a note indicating that Plaintiff's absence was physician-advised due to illness or injury and Plaintiff could return to work on January 6, 2020.

55.     On January 15, 2020, Kimberlie Glogowski (Non-Instructional Leaves Specialist) sent Plaintiff an email apologizing for the "longer than usual delay of the receipt of your FMLA letter that you were promised."  Glogowski noted that she processed Plaintiff's FMLA request and attached the approval notice for Plaintiff's FMLA leave from January 7, 2020 to February 7, 2020.

56.     Prior to February 2020, per Human Resources, Plaintiff was permitted to utilize her scooter chair to break down and set up the program.  Hasson told

Plaintiff that she had to leave the chair in the hallway because there was no room for it and it was a "nuisance."

57.     When Plaintiff would sit for her approved two minutes, Hasson gave Plaintiff dirty looks.  Furthermore, Plaintiff learned from a co-worker that Hasson told her that Plaintiff needed to "just stand up and do her damn job!"

58.     On February 14, 2020, Plaintiff was having a parent sign an accident log.  Hasson told Plaintiff to put the book back and do her job.  It surprised Plaintiff because that was her job.

59.     Additionally, Hasson told Plaintiff that Plaintiff's ADA schedule required her to go outside in the morning.  Plaintiff explained that Tranchina gave her a new schedule and Hasson told Plaintiff to "stop" and do as you are told.

60.     Later in the day, Grey told Plaintiff that she did not have to report to work on February 17, 2020.  Instead, Plaintiff was required to report to the PLACE office.  Plaintiff asked Grey why she was being asked to report to the office and Grey told Plaintiff that she wanted to meet with her since Plaintiff was out on FMLA leave.

61.     Plaintiff asked if she was getting fired and Grey responded: "of course not!"

62.     On February 17, 2020, Plaintiff attended the meeting with a union representative, Jim Ciadella (Director of Operations, United School Employees of Pasco).

63.     Plaintiff was not told that Tom Neesham was going to be present with Grey.  Neesham was extremely disrespectful to Plaintiff.  He started by saying: "we are here again, I guess you didn't heed my warning and find another job." Neesham then stated that Plaintiff's options were to resign or be terminated.

64.     Ciadella asked Neesham if Plaintiff could have some time, given her 17 years of service with the school board. Neesham refused and said that Plaintiff had enough time and failed to do what she was told.

65.     Neesham continued yelling at Plaintiff.  Plaintiff began crying and Ciadella had to step in.  He stated: "Tom, stop browbeating her, can't you see she's upset enough?"

66.     Neesham continued with a raised voice and told Plaintiff that she needed to make the decision on the spot and if she did not resign that day, he would fire her, and she would have no hope of getting unemployment.

67.     Neesham further stated that he would fight Plaintiff's unemployment if she did not resign, and he would make sure that she never got another job with the school board again.

68.    At that point, Plaintiff felt as though she had no other option but to resign from her job.

## COUNT I
## FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE

69.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-eight (68).

70.    Plaintiff is an individual entitled to protection under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, *et seq.*

71.    Plaintiff is an eligible employee within the meaning of the FMLA because Plaintiff worked for Defendant for twelve (12) months, had at least 1,250 hours of service for the Defendant during twelve (12) months immediately preceding her FMLA leave, and worked at a location where the Defendant had at least fifty (50) employees within seventy-five (75) miles.

72.    Defendant is a covered employer under the FMLA in that they had fifty (50) or more employees in twenty (20) or more work weeks in the current or preceding calendar year.

73.    Plaintiff suffered from serious health conditions within the meaning of the FMLA.

74.    Defendant's actions interfered with Plaintiff's lawful exercise of her FMLA rights.  Specifically, Defendant used Plaintiff's FMLA leave as a negative factor in employment actions against Plaintiff (disciplinary actions).  Moreover,

Plaintiff failed to restore Plaintiff to the same of substantially equivalent position upon Plaintiff's return from her FMLA leaves.

75.     Defendant's actions constitute violations of the FMLA.

76.     As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

     a.     Back pay and benefits;

     b.     Prejudgment interest on back pay and benefits;

     c.     Front pay and benefits;

     d.     Liquidated damages;

     e.     Attorneys' fees and costs;

     f.     Injunctive relief; and

     g.     For any other relief this Court deems just and equitable.

## COUNT II
## FAMILY AND MEDICAL LEAVE ACT - RETALIATION

77.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-eight (68).

78.     Defendant retaliated against Plaintiff in violation of the FMLA in that Plaintiff's request for FMLA leave, and the utilization of said leave was a substantial or motivating factor that prompted Defendant to take several adverse employment actions against Plaintiff, including:

(a)   harassing Plaintiff;

(b)   disciplining Plaintiff;

(c)   threatening Plaintiff's job; and

(d)   forcing Plaintiff to resign from her employment.

79.   Defendant's actions constitute violations of the FMLA.

80.   As a result of Defendant's actions Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.   Back pay and benefits;

b.   Prejudgment interest on back pay and benefits;

c.   Front pay and benefits;

d.   Liquidated damages;

e.   Attorneys' fees and costs;

f.   Injunctive relief; and

g.   For any other relief this Court deems just and equitable.

## COUNT III
## AMERICANS WITH DISABILITIES ACT – DISCRIMINATION

81.   Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-eight (68).

82.   Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq*.

83.     Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

84.     Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended.   Specifically, Plaintiff's Osteoarthritis, umbilical hernia blockage, and anxiety substantially limited one or more major life activities and/or one or more major bodily functions.

85.     Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

86.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant forced Plaintiff to resign from her employment.

87.     The above-described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

88.    Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

89.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

90.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.    Attorneys' fees and costs;

    f.    Injunctive relief; and

    h.    For any other relief this Court deems just and equitable.

## COUNT IV
## AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT OF 2008 ("ADAAA") FAILURE TO ACCOMADATE

91.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-eight (68).

92.     Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq*.

93.     Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

94.     Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended.   Specifically, Plaintiff's Osteoarthritis, umbilical hernia blockage, and anxiety substantially limited one or more major life activities and/or one or more major bodily functions.

95.     Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

96.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability by failing to accommodate Plaintiff's disabilities in violation of the Americans with Disabilities Act, as amended.

97.     The above-described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

98.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

99.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

100.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

  a.      Back pay and benefits;

  b.      Prejudgment interest on back pay and benefits;

  c.      Front pay and benefits;

  d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

  e.      Attorneys' fees and costs;

  f.      Injunctive relief; and

  h.      For any other relief this Court deems just and equitable.

**COUNT V**
**FLORIDA CIVIL RIGHTS ACT ("FCRA") – DISABILITY DISCRIMINATION**

101.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-eight (68).

102.    Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, *Fla. Stat.* §760, *et seq.*

103.   Plaintiff is an employee within the meaning of the Florida Civil Rights Act.

104.   Plaintiff is an individual with a disability/handicap within the meaning of the Florida Civil Rights Act.  Specifically, Plaintiff's Osteoarthritis, umbilical hernia blockage, and anxiety substantially limited one or more major life activities and/or one or more major bodily functions.

105.   Plaintiff was a qualified individual with a disability within the meaning of the Florida Civil Rights Act because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

106.   By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Florida Civil Rights Act.   Specifically, Defendant forced Plaintiff to resign from her employment.

107.   The above-described acts of disability discrimination constitute a violation of the FCRA, for which Defendant is liable.

108.   Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

109. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

110. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.    Attorneys' fees and costs;

    f.    Injunctive relief; and

    h.    For any other relief this Court deems just and equitable.

## COUNT VI
## FLORIDA CIVIL RIGHTS ACT ("FCRA") – FAILURE TO ACCOMADATE

111. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-eight (68).

112. Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, *Fla. Stat.* §760, *et seq.* (FCRA).

113. Plaintiff is an employee within the meaning of the FCRA.

114.   Plaintiff is an individual with a disability within the meaning of the FCRA.   Specifically, Plaintiff's Osteoarthritis, umbilical hernia blockage, and anxiety substantially limited one or more major life activities and/or one or more major bodily functions.

115.   Plaintiff was a qualified individual with a disability within the meaning of the FCRA because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

116.   By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability by failing to accommodate Plaintiff's disabilities in violation of the FCRA.

117.   The above-described acts of disability discrimination constitute a violation of the FCRA, for which Defendant is liable.

118.   Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

119.   Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

120.   As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.    Back pay and benefits;

b.    Prejudgment interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.    Attorneys' fees and costs;

f.    Injunctive relief; and

h.    For any other relief this Court deems just and equitable.

## COUNT VII
## AMERICANS WITH DISABILITIES ACT – RETALIATION

121.   Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-eight (68).

122.   Plaintiff engaged in protected activity under the Americans with Disabilities Act, as amended.   Specifically, Plaintiff requested reasonable accommodations for her disabilities and lodged complaints of disability-based discrimination.

123.   Plaintiff suffered adverse employment actions for engaging in protected activities under the Americans with Disabilities Act, as amended. Specifically, Defendant:

(a)    harassed Plaintiff;

(b)    disciplined Plaintiff;

(c)     threatened Plaintiff's job; and

(d)     forced Plaintiff to resign from her employment.

124.    Defendant's adverse employment actions were causally connected to Plaintiff's engagement in protected activities.

125.    The above-described act of retaliation constitutes a violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12112 *et seq*.

126.    Defendant's unlawful and retaliatory employment practices toward Plaintiff were intentional.

127.    Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

128.    As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.    Back pay and benefits;

b.    Prejudgment interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.    Attorneys' fees and costs;

f.    Injunctive relief; and

g.      For any other relief this Court deems just and equitable.

## COUNT VIII
## FLORIDA CIVIL RIGHTS ACT ("FCRA") - RETALIATION

129.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-eight (68).

130.    Plaintiff engaged in protected activity under the Florida Civil Rights Act (FCRA).  Specifically, Plaintiff requested reasonable accommodations for her disabilities and lodged complaints of disability-based discrimination.

131.    Plaintiff suffered adverse employment actions for engaging in protected activities under the FCRA.  Specifically, Defendant:

(a)      harassed Plaintiff;

(b)      disciplined Plaintiff;

(c)      threatened Plaintiff's job; and

(d)      forced Plaintiff to resign from her employment.

132.    Defendant's adverse employment actions were causally connected to Plaintiff's engagement in protected activities.

133.    The above-described act of retaliation constitutes a violation of the Florida Civil Rights Act, *Fla. Stat.* § 760, *et seq.*

134.    Defendant's unlawful and retaliatory employment practices toward Plaintiff were intentional.

135.    Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

136.    As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

  a.    Back pay and benefits;

  b.    Prejudgment interest on back pay and benefits;

  c.    Front pay and benefits;

  d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

  e.    Attorneys' fees and costs;

  f.    Injunctive relief; and

  g.    For any other relief this Court deems just and equitable.

WHEREFORE, Plaintiff respectfully request all legal and equitable relief allowed by law including judgment against Defendant for prejudgment interest, payment of reasonable attorneys' fees and costs incurred in the prosecution of the claim and such other relief as the Court may deem just and proper.

**DATED** this 16th day of September 2021.

FLORIN GRAY BOUZAS OWENS, LLC

/s/Gregory A. Owens
GREGORY A. OWENS, ESQUIRE
Florida Bar No.: 51366

greg@fgbolaw.com
WOLFGANG M. FLORIN, ESQUIRE
Florida Bar No.: 907804
wflorin@fgbolaw.com
16524 Pointe Village Drive
Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*